## C. H. ROBINSON COMPANY *v.* HUDGINS PRODUCE COMPANY.

### Opinion delivered May 19, 1919.

1. SALES—ACCEPTANCE.—Where a produce company bought a carload of apples from defendant, not knowing that defendant was the agent of the owner until the car arrived, and it accepted the shipment only after being notified by an agent of the United States Government that it must receive the apples in order to conserve food during the war with Germany, the produce company is entitled to treat the contract as one between the agent and itself, and to make any defense against the intervening owner which it could have made against the agent.

2. EVIDENCE—EXPERT TESTIMONY.—A witness who has handled apples for over 27 years is entitled to give his opinion as to when certain apples were frozen and that it takes the decay in frozen apples some time to show.

3. SALES—DAMAGES—QUESTION FOR JURY.—In an action by a buyer of apples for damages, the question whether or not the apples were frozen before they were loaded into the car for shipment *held* for the jury.

4. SALES—MEASURE OF DAMAGES.—In an action by a consignee of apples received in an unmarketable condition, the correct measure of the buyer's damages is the difference between the contract price and the amount they brought when sold for the best price obtainable.

5. APPEAL AND ERROR—CONTINUANCE—DISCRETION OF COURT.—The granting or refusing of a continuance is within the discretion of the trial court, and will not be reviewed on appeal, save for for abuse of discretion.

6. CONTINUANCE — ABUSE OF DISCRETION.—Where the witness for whose absence a continuance was asked lived beyond the court's jurisdiction so that it would have been necessary to take their deposition, and the motion for continuance, read as testimony, set forth their testimony fully, the court did not abuse its discretion in refusing a continuance.

7. SAME—ABSENCE OF COUNSEL.—The court did not abuse its discretion in refusing a continuance on account of sickness of chief counsel where the case was thoroughly prepared for trial by other counsel.

8. TRIAL—INSTRUCTIONS—REPETITION.—It was not error to refuse requested instructions covered by an instruction given.

Appeal from Miller Circuit Court; *George R. Haynie,* Judge; affirmed.

### STATEMENT OF FACTS.

This was a suit in attachment brought by the Hudgins Produce Company, a domestic corporation, against C. H. Robinson Company, a non-resident corporation, to recover the sum of $526.40 damages alleged to have been occasioned by the spoiled condition of a car of apples which the plaintiff had purchased from the defendant.

The defendant, C. H. Robinson Company, filed an answer denying the material allegations of the complaint and alleged that the plaintiff, Hudgins Produce Company, had purchased the apples in question through it as a broker from the Wenatchee Produce Company, a corporation domiciled at Wenatchee, Washington.

The Wenatchee Produce Company intervened claiming the proceeds of the car of apples. except the sum of $30 brokerage due the C. H. Robinson Company.

The facts are as follows: The C. H. Robinson Company is a non-resident corporation doing a brokerage business with a branch office at Kansas City, Missouri. Wenatchee Produce Company is a corporation domiciled at Wenatchee, Washington, and is engaged in the business of selling apples by carload lots. The Hudgins Produce Company is a domestic corporation engaged in selling apples and other produce at Texarkana, Arkansas. On February 21, 1918, C. H. Robinson Company, from its office at Kansas City, Missouri, wired the Hudgins Produce Company at Texarkana, Arkansas, its offer of a car of apples. The Hudgins Produce Company wired its acceptance of the offer. On the 13th day of February, 1918, the Wenatchee Produce Company loaded a car of apples at Wenatchee, Washington, and consigned same to itself at Kansas City, Missouri. On the 23rd day of February, 1918, the C. H. Robinson Company, by an agreement with the Wenatchee Produce Company, changed the destination of this car of apples from Kansas City, Missouri, to Texarkana, Arkansas, in fulfillment of its contract with the Hudgins Produce Company. An inspection of the car of apples was allowed. On the same day, the C. H. Robinson Company wrote from its office at Kansas City, Mis-

souri, to the Hudgins Produce Company at Texarkana, Arkansas, notifying the latter that it had diverted the car of apples to Texarkana, Arkansas, and had drawn a draft on the Hudgins Produce Company for $526.40, the price of the car of apples. The car of apples was consigned to the shipper's order at Texarkana, Arkansas, with directions to notify the Hudgins Produce Company. The draft with the bill of lading attached was sent to the latter company. The car of apples arrived at Texarkana on the 11th day of March, 1918. An inspection was made by the Hudgins Produce Company and the apples were found to be in bad condition.

Several witnesses testified that they examined the apples and that most of them were rotten on the inside; that they were not in a merchantable condition; that most of them appeared sound on the outside but were rotten on the inside and were not fit for sale in the usual way.

The Hudgins Produce Company first refused to receive them on account of their damaged condition. They were notified by the food administrator of the county that under the rules and regulations of the United States Government during the war with Germany, that they would have to accept the apples in order to conserve the food value of the shipment. The Hudgins Produce Company then paid the freight and expense bill amounting to $408.13 and also paid the draft for the purchase money drawn by the C. H. Robinson Company. The draft for the purchase price of the apples was paid on March 16, 1918. The Hudgins Produce Company bought the apples from the C. H. Robinson Company and did not know that the Wenatchee Produce Company had any claim to them until after the apples had arrived at Texarkana.

Evidence was adduced by the Hudgins Produce Company tending to show that the damaged condition of the apples was due to the fact that they had been frozen either before they were loaded into the car, or after they were loaded into the car, but before the car of apples was diverted to Texarkana, Arkansas. The apples were loaded on board the car on February 13, 1918, and the car

was diverted to Texarkana, Arkansas, on February 23, 1918. During this interval the weather was extremely cold. The Hudgins Produce Company sold the car of apples to the best advantage possible and the amount received lacked $80 of paying the freight charges.

On the part of the defendant and intervener, it was shown that the apples were in good condition when loaded in the car at Wenatchee, Washington, and were also in good condition when the car was diverted from Kansas City, Missouri, to Texarkana, Arkansas. Other facts will be stated in the opinion.

The jury returned a verdict for the plaintiff, Hudgins Produce Company, against the defendant, C. H. Robinson Company, in the sum of $526.40 and found against the interplea of the Wenatchee Produce Company.

The case is here on appeal.

*Will Steel* and *H. M. Barney,* for appellants.

1. It was error to give plaintiff's instructions. The measure of damages is not properly stated. 35 Cyc. 633; 117 Ark. 442; 79 *Id.* 338; 94 *Id.* 319; 113 *Id.* 170.

2. There were errors in refusing defendant's and intervener's instructions. 78 Ark. 330; 70 *Id.* 65; 76 *Id.* 179; 74 *Id.* 144; 89 *Id.* 108; 70 *Id.* 61; 50 *Id.* 31; 110 *Id.* 265; 2 Mechem on Sales, par. 1322; 118 Ark. 17. See also 14 Ark. 427; 21 *Id.* 499; 22 *Id.* 580.

3. It was error to refuse the continuance. The court abused its discretion on the showing made. On the whole record appellee has no cause of action. See cases *supra.*

*Webber & Webber* and *W. H. Arnold,* for appellee.

1. There are no errors in the instructions given, and those refused were not the law. The law of this case is lucidly stated in 53 Ark. 159; 22 *Id.* 454. See also Benjamin on Sales, § 894; *Ib.,* § § 899-901; 9 Howard 226; 12 Ark. 699; 81 Ark. 560; 22 *Id.* 454; 53 *Id.* 155; 115 U. S. 363; 13 L. R. A. 224; 95 Ark. 488; 94 *Id.* 318.

2. On the question of damages, see 117 Ark. 445.

3. As to the expense bill, see 79 Ark. 338.

HART, J., (after stating the facts). The first assignment of error is that the judgment should be reversed because the court gave instruction No. 1, which is as follows:

'If you find from the evidence that Wenatchee Produce Company loaded the car of apples in controversy at Cashmere, Washington, and took bill of lading subject to their own order and that the car was shipped February 13, 1918, to Kansas City, and if you further find that Charles H. Robinson Company accepted an order from Hudgins Produce Company for a car of apples on February 23rd, and that under some agreement between Wenatchee Produce Company and said Robinson Company the said car was diverted from its route by the order of Chas. H. Robinson & Company and shipped it to said Hudgins Produce Company and sold it to them; and that said Hudgins Produce Company took and paid for said car and that said shippers, Wenatchee Produce Company, intended that said Robinson should take and sell the same, then you are instructed that said Wenatchee Produce Company cannot recover on on their interplea.''

There was no error in giving this instruction. The undisputed evidence shows that the Hudgins Produce Company bought the car of apples from the C. H. Robinson Company and did not know that the Wenatchee Produce Company had any claim to the apples until after the car had arrived at Texarkana and the plaintiff had been notified by an agent of the United States Government that it must receive the car of apples in order to conserve food values during the war with Germany.

The present suit was a suit in attachment by the Hudgins Produce Company against C. H. Robinson Company, but the Wenatchee Produce Company was allowed to intervene and claim the proceeds of the car of apples. This, in effect, amounted to the institution of a suit by the Wenatchee Produce Company against the Hudgins Produce Company for the price of a car of apples. The law is that where an undisclosed principal sues on a contract made by his agent in the latter's own name with the de-

fendant, who had no knowledge of the agency but supposed that the agent dealt for himself, the suit is subject to any defense by the defendant against the agent before he had notice of the principal's rights. *Frazier* v. *Poindexter*, 78 Ark. 241; *Quinn* v. *Sewell*, 50 Ark. 380; and *Beatrice Creamery Co.* v. *Garner*, 119 Ark. 558. The doctrine rests upon the ground that the principal who has permitted an agent to deal with his goods as his own must not only take the contract as the agent made it, but is virtually estopped from alleging that the agent is not the real plaintiff in his (the principal's) suit.

It is next insisted that the court erred in giving instruction No. 3, which reads as follows:

"If you find from the evidence that the apples were in damaged condition when received by Hudgins Produce Company and that such damaged condition existed before the apples were loaded in the car for shipment, or that they were in said condition before the order for the car was accepted by Chas. H. Robinson Company and the car diverted for shipment to Hudgins Produce Company, then you are instructed that plaintiff is entitled to recover from said Chas. H. Robinson Company the damages sustained, if any, and not against the railway company which issued the bill of lading to Wenatchee Produce Company; and you are further instructed that plaintiff had the right to take said car without waiving its claim for damages against said defendant, should you find that the apples or a part of them were not merchantable or reasonably fit for the purpose for which they were purchased."

It is claimed that it was error to give this instruction because it submits to the jury the question as to whether or not the car of apples was in a damaged condition before the apples were loaded in the car for shipment. It is insisted that the undisputed evidence shows that the apples were in good condition when they were loaded in the car for shipment.

It is true the evidence for the defendant and intervener shows that when the car was loaded it was inspected

and the apples were found to be in good condition. The jury might have found, however, from the evidence introduced by the plaintiff, that the apples were in a damaged condition when loaded in the car for shipment. On this point A. F. Elder testified that he was familiar with the handling of shipments of apples by wholesale in the winter time and with the storage of apples, gained by an experience of twenty-seven years. He examined the car of apples in question after it arrived at Texarkana, and found upon inspection that the apples showed decay. He found that the apples in the center of the car showed more decay than did those on the sides of the car. He said that this indicated that the apples were loaded in the car in that condition and that they had been exposed to extreme heat—heated in piles; or had been frozen before packing. That while the apples from the peeling appeared perfectly good, when you opened them up they were bad inside. His opinion was that the decay had set up in the apples three or four weeks before he examined them; that it takes the decay in apples some time to show after they have been frozen. In response to a question on cross-examination he stated that it would be hard to determine the exact time it would take; that it would take real expert knowledge beyond his knowledge to tell that. Because of this answer counsel insist that the witness was not an expert and that his testimony should not be taken to contradict that of the defendants. We do not agree with counsel in the contention.

As we have already pointed out he had gained his knowledge by an experience in handling apples extending over twenty-seven years. He testified in detail about the matter, and from his testimony the court might have found that the apples had been frozen before they were loaded into the car. Although this was a month prior to the time that he had examined the apples, the jury might have found that, although frozen before they had been loaded, the apples did not show their decay at that time. From the testimony of other witnesses the jury might have found that the apples were frozen on the way south

after they had been loaded into the car. It was shown that the weather was extremely cold for ten days after their shipment. It was about one month from the time they were shipped until they arrived in Texarkana. Therefore we do not think that the court erred in giving this instruction.

It is next insisted that the court erred in giving instruction No. 4, which reads as follows:

"If you find for the plaintiff, the measure of damages will be the amount you find from the evidence that plaintiff paid the railway company for freight on delivery of the apples and the amount paid on the draft drawn by Robinson & Company, less whatever amount you find from the evidence that plaintiff realized in the sale of the apples. Your verdict herein should not exceed the amount sued for, $526.40, with interest from March 16, 1918, thereon at the rate of six per cent. per annum."

It is contended that the court should have told the jury that the measure of the plaintiff's damages was the difference between the contract price and the market price of the apples at the time they were delivered at Texarkana. Counsel would have been correct in this contention, provided there had been a market price for them in their condition when received there. The undisputed testimony shows that nearly all of the whole car of apples was in a damaged condition and that it was necessary to sell them at once. All the witnesses said that they were not merchantable apples. The plaintiff sold them for the best price obtainable and the instruction was correct under the evidence in this case. *Meredith* v. *Matthews,* 117 Ark. 442.

It is also insisted that the court erred in not granting the motion for a continuance. It is well settled in this State that the granting or refusing a continuance is a matter in the sound legal discretion of the court below and will not be reviewed on appeal save for an abuse of discretion to the prejudice of the party appealing.

Tested by this well established rule there was no error in refusing to grant the motion for a continuance,

The case had been continued for one term of the court and the witnesses embraced in the motion all lived beyond the jurisdiction of the court so that it would have been necessary to take their depositions. The motion for a continuance was read as testimony to the jury and the testimony of the witnesses appeared in it as fully as it could have been taken in depositions.

It is also insisted that the motion should have been granted because the chief counsel for the defendant and intervener was sick at the time it was necessary to prepare the case for trial and the local counsel was not familiar enough with the facts to properly prepare the case for trial. The record affirmatively shows that the case was as thoroughly prepared for trial as could have been done by any other attorneys.

Therefore there was no error in refusing to grant the motion for a continuance. Counsel for the defendant and intervener requested the court to give many instructions and now assign as error the action of the court in refusing to give them. We do not deem it necessary to discuss them separately. The court fully and fairly submitted the disputed issues of fact in the case to the jury and it has been uniformly held that it is not necessary to repeat instructions to the jury.

We find no prejudicial error in the record and the judgment will be affirmed.